## Kerr *versus* Kitchen.

1. A vendee having accepted a conveyance which referred to a trust deed with its date, and reference to the record of it, his conveyance containing a covenant for quiet enjoyment, will be considered, in the absence of evidence to the contrary, to have had notice of the trusts in the deed, and to have protected himself against them by the covenant for quiet enjoyment.

2. A conveyance of real estate was made by a *feme sole* in contemplation

[Kerr *v.* Kitchen.]

of marriage, to a trustee for her separate use; and subsequently she and her husband and the trustee, the latter acting in his own right, joined in a conveyance of the premises in fee, subject to a ground-rent, which conveyance did not refer to the trust deed: *Held,* that if the trust deed were concealed from the purchaser, the conveyance to him of the estate, without notice of the trust, vested in him a perfect title, discharged of the trusts. The *subsequent* notice of the trust deed, though it cannot divest his estate, may oblige him to pay the ground-rent according to the trusts.

3. The legislature possesses the constitutional power to authorize the trustee of the legal title to land to convert it into money for the purpose of distributing the proceeds among the persons entitled: and a deed executed in conformity with such an act, by the trustee of the legal title, confirming the deed thus made by the husband and wife and of himself as trustee, will vest in the purchaser a valid title to the premises.

4. A conveyance being made by one having a defective or voidable title, and possession delivered, the defect in the title may be cured after suit brought for the purchase-money.

ERROR to the District Court, *Philadelphia.*

This was an action of debt on a ground-rent deed, brought by Phœbe Kitchen *v.* James Kerr. The execution and delivery of the deed were proved, and the amount of the arrears of ground-rent in contest, was not disputed.

James Kitchen died in July, 1826, seised of real estate, *inter alia,* of a lot of ground situate on Schuylkill Front street near Pine street, in the city of Philadelphia. He left a will dated the 31st day of July, 1825, which was subsequently duly proved, and by that will devised his estate, real and personal, to his wife, and upon her death to his five children, Henry N., James, Elizabeth D., Phœbe, and William, in equal parts.

By deed dated the 9th day of September, 1828, the said Henry N. Kitchen and Elizabeth his wife, conveyed all his right and interest in the estate devised by his father, including the premises in question, to his mother Phœbe Kitchen in fee.

By deed poll dated the 17th day of September, 1828, the said Phœbe granted the said estate to *James* Kitchen in special trust, for the use of the wife of the said *Henry N.* Kitchen, during the joint lives of the said H. N. and Elizabeth, also to Elizabeth during her widowhood, and after her death or marriage to such of the children of the said Henry as might be then living. No power was given to the trustee to grant, encumber, or charge the estate.

Henry N. Kitchen died before the commencement of this suit, leaving Elizabeth his widow and one child, a minor; both are still living, and the said Elizabeth remaining unmarried.

On the 24th May, 1839, Phœbe Kitchen, widow, James Kitchen as trustee under the said deed poll dated the 17th day of Sept. 1828, the said James Kitchen in his own right, Elizabeth D. Kitchen, Frederick Schofield and Phœbe his wife, late Phœbe Kitchen, and William Kitchen and wife, by indenture granted the said premises to James Ker on ground-rent, viz. $306 per annum, and the said James Ker covenanted to erect within three

[Ker *v.* Kitchen.]

years sufficient buildings to secure the said ground-rent. This deed contained a reference to the deed of trust by Phœbe Kitchen, (the mother) to James Kitchen, "upon the trusts and to the uses, intents, and purposes therein declared," and stated its date. It referred to it as being recorded, and stated the place of its registry. The deed to Ker contained a covenant for quiet enjoyment.

It was alleged on part of Ker that no notice was given to him of the nature of the trust contained in the said deed poll of the 17th Sept. 1828, except the implied notice *from its record*, and the recital thereof in the ground-rent deed.

On the trial, the agent of the grantors deposed that he was employed by Mrs. Kitchen to let the property on ground-rent, and says, "I knew of the trust deed, and I thought there might be some difficulty in managing it; I knew of that (trust) deed, but I submitted it to the superior knowledge of Mr. Bonsall as to examining the title; I considered it a bargain to Mr. Ker and very cheap."

It appeared in evidence by Messrs. Harvey Phillips and William Alexander, that $3 per foot was the full value of the premises.

Mr. Bonsall, who was employed by Mr. Ker as scrivener, divided with the agent the commission paid by the grantors for selling the lot, and deposed that he was ignorant of the defect, and when Mr. McCurdy handed the title papers, the deed of trust was withheld. It was also proved on this trial, which was not proved on the former trial hereafter referred to, that Dr. James Kitchen, in selling other property which passed under the same title, had declared that the title was good except a small judgment.

James Ker paid the ground-rent for four years, viz.:—$1224, and $153.58 taxes, in all $1337.98; when he was apprised of the defect of title, he immediately, viz., on the 24th December, 1844, *tendered a reconveyance to the parties, which was refused.*

On the 11th March, 1845, James Ker instituted a suit in the District Court for the city and county of Philadelphia (December Term, 1844, No. 713), to recover back the money paid by him. The case was tried before Judge JOEL JONES, on the 19th January, 1846, who ordered a *nonsuit* on the plaintiff's evidence. The case was carried by plaintiff to the Supreme Court, where the decision of the court below was affirmed; but the court, BELL, J., in delivering the opinion, says:—

"Were this suit brought *to recover purchase-money*, a grave question might be presented; but it is clear beyond cavil, there is nothing in the case to take it out of the rule I have stated in respect to *money paid:*" Kerr *v.* Kitchen, 7 *Barr* 486.

On the 3d of February, 1845, the plaintiff instituted this suit against the defendant below, to recover one year and a half ground-rent, due 1st May, 1844, viz.: $459, and $139.89 interest,

altogether $598.89. The case was tried before FINDLAY, J., on the 29th May, 1849, and in accordance with the opinion of the court, a verdict was rendered for the plaintiff.

On this trial, the plaintiff gave in evidence an Act of Assembly, passed the 26th March, 1846, authorizing the trustee, James M. Kitchen, to sell and convey the premises on certain conditions. See Acts of 1846, p. 155, &c., authorizing a conveyance in fee by the trustee under both of the trust deeds referred to in this case.

Also a deed of confirmation, executed by James Kitchen as trustee of the estate of Eliza M. Kitchen, and by James Kitchen as trustee of the estate of Phebe K. Scofield, dated the 13th day of May, 1846, which it was admitted had been tendered to Mr. Ker and refused.

To this evidence the defendant's counsel objected. The court overruled the objections and admitted the evidence, and the defendant's counsel excepted.

Another deed also existed, which was not given in evidence by the defendant on the trial; but its existence was admitted by the Act of Assembly, and the deed of confirmation. It was a deed of trust, dated the 5th day of March, 1838, by Phœbe Kitchen, the younger, made in contemplation of marriage, by which she conveyed to James Kitchen all her real and personal estate, in trust for the separate use of the grantor. It was not recorded till 2d April, 1840, being after the conveyance to Ker.

On the part of Ker, it was alleged and contended, that it appeared from the evidence, that the grantors fraudulently concealed from him the inability of the trustee to convey.

That the certificate as to searches excluded conveyances. That the defects in the title were a bar to the plaintiff's recovery.

By the Act of Assembly and the deed of confirmation, it appeared that Frederick Schofield and wife had no right to convey—that they had previously, by marriage settlement, transferred the property. The deed recites that this marriage settlement was not recorded till the 24th day of April, 1840. The production on the last trial of the Act of Assembly, and the deed of confirmation, was the first notice of this additional defect of title, and all information relative to it was concealed.

On the trial the defendant asked the court to charge:

1. That in point of law, the plaintiff is not entitled to recover, because the title of the grantors was defective at the time the conveyance was made and suit brought.

2. That if the plaintiff is under any circumstances entitled to recover, still if the jury believe that the grantors fraudulently concealed from the defendant the defect in the title, the plaintiff cannot recover.

3. That this is a question of fact for the jury to determine.

[Ker *v.* Kitchen.]

4.' That the deed of the grantors to the defendant is not proved or acknowledged according to the directions of the Acts of Assembly of Pennsylvania, in such cases made and provided.

The judge answered the first and fourth points in the negative; and in answer to the second and third points, said, that there was no evidence of fraudulent concealment by the plaintiff, and directed the jury to find for the plaintiff.

The defendant tendered a bill of exceptions on each part thereof separately.

The answers of the court to the four points submitted were assigned for error; and also 5. That the court directed the jury to find for the plaintiff, and took the case from their consideration. 6. The court erred in admitting the evidence offered by the plaintiff of the passage of the Act of Assembly, and the tender of the conveyance to the defendant, both being subsequent to the commencement of the suit.

The case was argued by *Randall*, for plaintiff in error.—1. This is a case where the grantors in a deed conveyed what they had previously granted, and knowing at the time of the second conveyance that they had no power to convey. It is not the ordinary case of defect of title or existence of encumbrances, but it is the case of grantors attempting to execute two deeds utterly inconsistent, and when the execution of the first conveyance placed it out of the power of the parties legally to execute the conveyance subsequently made.

The trust deed of the 17th September, 1828, gives no authority to the trustees to grant or convey the property in fee or in ground-rent, and no such power could legally be exercised: 1 *Wharton* 514, Pullen *v.* Rianhard.

The marriage settlement of Frederick Schofield and wife, dated the 24th day of March, 1838, gives no authority to any one to sell or convey the property in question.

Where the vendor is not the owner at the time of the sale, equity will not compel the vendee to take the estate: 3 *Watts* 365, Ley *v.* Huber; 5 *W. & Ser.* 51; 16 *Ser. & R.* 198. If the vendee discover that a defect in the title exists, which the vendor has not power to remove, the vendee has a right to rescind: 2 *Watts* 257, Moore *v.* Shelly; 1 *Barr* 35.

There was evidence of fraud which should have been left to the jury, the evidence of which was the concealment from Ker of the terms of the trust, and the withholding from him of the trust deed. It was not exhibited to the scrivener. Though the trust deed was on record, Ker was not made acquainted with its contents. But notice of record is not a sufficient answer, when there is evidence of misrepresentation or mutual mistake: 5 *W. & Ser.* 478; 7 *Id.* 201; 2 *Barr* 122.

[Ker *v*. Kitchen.]

The searches excluded conveyances; they were confined to mortgages. An Act of Assembly subsequently passed cannot compel a purchaser to take a property on which he is asked to pay ground-rent, when he can do nothing with the property, and his power to improve it is entirely destroyed. The Act of Assembly and deed of confirmation were therefore not evidence, because their respective dates were subsequent to the contract, the time for which the alleged ground-rent became due, and the commencement of the present suit.

*G. M. Wharton*, for defendant in error, plaintiff in the suit.— There was no fraud in the case : see 7 *Barr* 487–8. It is alleged on part of defendant below, that, supposing there was no fraud, there was a failure of consideration through a defect of title to an undivided interest in the lot on ground-rent, for arrears of which this suit was brought. It is answered, 1. That defendant having bought with full knowledge of the defect in his title, with a covenant for quiet enjoyment, and without any concealment or fraud practised upon him, the defendant was bound to pay the ground-rent, there having been no eviction or disturbance of the defendant's title on the part of any one, or in any way, and no covenant broken. After deed executed, and in the absence of imposition or fraud, the parties have no recourse to each other : Bank *v*. Galbraith, 10 *Barr* 490; 7 *Howard* 132–159.

2. That even if there were any difficulty under the first head, if the case rested alone upon that point, there could be none with the further fact shown by the evidence, viz. that under the authority of an Act of Assembly of this Commonwealth, passed March 20, 1846, Dr. James Kitchen was authorized to convey on ground-rent by virtue of the trust deeds to him (which gave rise to the question of defect of title), and that in pursuance of such Act of Assembly, a deed of confirmation of his title had been duly executed by the trustee, and tendered to the defendant. This Act was constitutional : 2 *Barr* 277, Norris *v*. Clymer.

The opinion of the court was delivered March 1, by

Lewis, J.—This is an action of debt to recover ground-rent reserved by a conveyance of the 24th May, 1839, under which James Ker received, and still holds possession of the premises. There is a covenant for quiet enjoyment, and there has been no eviction. Two objections are made to the recovery of the ground-rent.

1. It is alleged that the title is defective by reason of the deed of Phœbe Kitchen to James Kitchen, in trust for Elizabeth, the wife of Henry N. Kitchen, dated the 17th September, 1828 This deed is recited in the conveyance to Mr. Ker, and the book and page in which it is recorded are particularly referred to as

[Ker *v.* Kitchen.]

part of the vendor's chain of title. In the absence of evidence to the contrary, the vendee must, therefore, be taken to have had full knowledge of the trusts contained in it, and to have protected himself from any injury arising from them by taking the covenant for quiet enjoyment. There has been no breach of that covenant. The defence on this ground is, therefore, unsustained.

The second objection rests upon the deed of 5th March, 1838, from Phœbe Kitchen (the younger) to James Kitchen, in trust for the separate use of the grantor. This deed was not recorded at the time of the conveyance to Mr. Ker; and it is alleged that it was concealed from him. If this allegation be true, his purchase from both the parties to this conveyance, without notice of its existence, vested in him a perfect title to the property, discharged of the trusts created by it; and the subsequent notice of its existence, although it may oblige him to pay the ground-rents according to the trusts, cannot divest the estate previously acquired by the vendee. So that the *suppressio veri* complained of works no injury to him, and therefore furnishes no reason for refusing payment of the ground-rent, according to the reservation of the deed under which he holds possession. But if an objection to the title ever existed upon this ground, it has been removed by the Act of Assembly of 20th March, 1846, and the deed of confirmation by the admitted holder of the legal title made under that act: Norris *v.* Clymer, 2 *Barr* 277. It is settled by judicial authority, and by long and uninterrupted usage, upon which many titles are founded, that the legislature may authorize a trustee of the legal estate in land to convert it into money, for the purpose of distributing the proceeds among the parties entitled. The conversion of land into money is an incident of ownership, which, by the common law, goes with the legal title. The exercise of that power by a trustee clothed with the legal estate, under the sanction of an Act of the Legislature, divests no legal right, and is not a breach of trust, if the proceeds be substituted for the land, and appropriated according to the rights of the parties, as they existed before the conversion.

Phœbe Kitchen can have no equitable ground to complain of a statute which but confirms her own deed, and precludes her from perpetrating a fraud by setting up against her own vendee an outstanding equity, which she concealed from him at a time when justice required her to make it known. Nor have we any evidence that she is asserting, or ever intends to assert any such claim. The claim is set up by the vendee for the purpose of relieving himself from the payment of the consideration-money. The vendors have conveyed the legal estate to the vendee, subject at most to outstanding equities. And the case of Moss *v.* Hanson, decided at the present term, is the latest authority for the principle that where there is a conveyance and possession delivered by

[Ker *v.* Kitchen.]

one having a voidable title, the defect may be cured after suit brought for the purchase-money.

The fourth error, marked D, has been withdrawn by the plaintiff in error; and it is the opinion of this court, that he has suffered no injury from the other errors assigned.

Judgment affirmed.